IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA

BRUNSWICK DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 CASE |
| | ) | No. 24-20266 |
| JOHNNIE MARENE THOMAS, | ) | |
| | ) | |
| Debtor. | ) | |

## OPINION AND ORDER DENYING
## DEBTOR'S MOTION TO CONVERT TO CHAPTER 13

Pursuant to notice, Debtor's *pro se*[1] Motion to Convert to Chapter 13 (ECF No. 215)

(the "Motion") came on for hearing on April 3, 2025. The Chapter 7 Trustee (the "Trustee")

filed an Objection (ECF No. 217) (the "Objection") to the Motion. Creditor Alvin Thomas,

as an Individual and as Administrator of the Estate of Irene Thomas ("Mr. Thomas"), filed

a Response (ECF No. 231) (the "Response") in opposition to the Motion. Debtor filed two

documents (ECF Nos. 225, 227) in response to the Objection, as more particularly described

below.

For the reasons stated below, after consideration of the Motion, the Trustee's

---

[1] *Pro se* filings are entitled to liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed."); United States v. Ogiekpolor, 122 F.4th 1296, 1304 (11th Cir. 2024) ("We liberally construe *pro se* filings. *Pro se* litigants, however, are required to conform to procedural rules.") (internal citations and quotations omitted). However, liberal construction has limits, and the Court is not permitted to rewrite a *pro se* litigant's filings for him. See Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014) ("Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action.") (quotation omitted).

Objection, Mr. Thomas's Response, Debtor's filings in response to the Trustee's Objection, the record in this case, the arguments presented at the hearing, and the relevant law, the Debtor's Motion to Strike (as defined below) will be denied, the Trustee's Objection will be sustained, and the Motion will be denied.

## BACKGROUND

Debtor filed her chapter 7 bankruptcy petition *pro se* on July 24, 2024. Debtor has been uncooperative in the chapter 7 administration of her bankruptcy estate nearly since the onset of this case. (See, e.g., ECF No. 46 (seeking sanctions against a creditor and his attorney for asking about her financial condition at the § 341 meeting); ECF Nos. 137, 177, 178, 179 (opposing the turnover and sale of non-exempt bankruptcy estate property and attacking the Trustee's authority under the Bankruptcy Code without legal support); ECF Nos. 48, 73, 96, 137 (requesting the Trustee to investigate her unsupported allegations against Mr. Thomas and investigate and indict state officials, including judges and other elected officials)). Now she moves to convert the case to chapter 13.

In her Motion, Debtor simply states she "moves this court for a conversion" to chapter 13 under 11 U.S.C. § 706. (ECF No. 215.) There is no argument in support of the Motion.

In objecting to the Motion, the Trustee contends that Debtor is not eligible for

chapter 13 because she has acted in bad faith during the pendency of this chapter 7 case by failing to disclose in her Schedule A/B her interests in the following property: 3121 Wedgewood Drive, Macon, GA (25% interest); 2029 Kitchens Road, Macon, GA (50% interest); 1606 George Street, Brunswick, GA (100% interest); and proceeds from the tax sale of 1412 Second Street, Macon, GA (50% interest). (ECF No. 217 at 4; see also ECF No. 192.) Only at the § 341 meeting and after questioning by the Trustee did Debtor admit to these interests. (ECF No. 217 at 4.) The Trustee has since liquidated 3121 Wedgewood Drive, Macon, GA and secured Debtor's portion of the proceeds of the tax sale of 1412 Second Street, Macon, GA. (Id. at 1-2.) The Trustee further contends that Debtor has acted in bad faith by claiming a homestead exemption in property that she admitted was not her residence and by filing "countless motions and objections with no basis in law in an attempt to frustrate the Trustee's administration of her estate." (Id. at 4.) The Trustee argues that Debtor now seeks to convert her case solely because he has moved for turnover of her real property located at 4260 Bingham Court, Stone Mountain, GA, and intends to liquidate it for the benefit of her creditors. (Id.) All of this, the Trustee posits, is evidence of Debtor's bad faith. Alternatively, the Trustee argues that Debtor's Motion should be denied because she cannot satisfy the best interest of creditors test of 11 U.S.C. § 1325(a)(4)—her creditors will receive more in a chapter 7 liquidation than they would receive under a chapter 13 plan. (Id. at 4-5.)

Mr. Thomas adopted the arguments set forth in the Trustee's Objection. He also asserts that conversion to chapter 13 requires a debtor to be eligible for chapter 13, see 11 U.S.C. § 706(d), and Debtor is ineligible to be a chapter 13 debtor because she scheduled debts in excess of the chapter 13 debt limits under 11 U.S.C. § 109(e) and 11 U.S.C. § 104. (ECF No. 231 at 1.) Mr. Thomas further states that Debtor's Motion was filed in bad faith and that she likely intends to convert to chapter 13 and dismiss her case, rather than pay her creditors. (Id.) Therefore, Mr. Thomas requests that the Motion be denied.

In response to the Trustee's Objection, Debtor filed two documents. First, she filed a Motion to Strike (ECF No. 225) (the "Motion to Strike") the Trustee's Objection. She states, inaccurately, that there are no "valid creditors" in this case and no "lawful valid perfected claim[s]" have been filed under Federal Rule of Bankruptcy Procedure 3001. (Id. at 1.) She alleges, without legal argument, that this chapter 7 proceeding is "moot, null and void"; accuses the Trustee and the undersigned of "civil theft" by allowing the liquidation of her property; and claims she has been deprived of due process because no jury trial has been held on her "objections" throughout the case. (Id. at 2.) She requests that the Trustee and the undersigned judge be removed from their positions and seeks an unspecified "sanction" against the Trustee; the undersigned; and the U.S. Trustee "for causing punitive

damages upon the Debtor."[2] (Id.)

Second, Debtor filed a document titled "Debtor's Motion 'Employed/Income.'" (ECF No. 227.) In this document, she states she has a regular income from a part-time job as an administrative assistant at the "American Prose [sic] Law Institute" located in Jacksonville, Florida, and earns an annual salary of $22,000 to $23,000 in this position. (Id. at 1-2.)

The Trustee and Mr. Thomas, through counsel, appeared at the hearing. Debtor did not appear.

---

[2] In giving Debtor's request that I be "removed" the liberal construction required, I have construed this as a request for recusal. To the extent that Debtor seeks my recusal from this case via her Motion to Strike, such request is unfounded and shall be denied. Fed. R. Bankr. P. 5004(a); 28 U.S.C. § 455. Debtor has not identified any grounds for recusal. Scott v. Anderson (In re Scott), 627 B.R. 134, 141 (B.A.P. 8th Cir. 2021) ("A party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise."). It appears only that Debtor has objections to adverse rulings by the Court. This is not sufficient grounds for recusal. Gwynn v. Walker (In re Walker), 532 F.3d 1304, 1311 (11th Cir. 2008) ("Adverse rulings are grounds for appeal but rarely are grounds for recusal . . ."). Furthermore, I find that there is no reason for me to recuse myself from this case under either 28 U.S.C. §§ 455(a) or (b); and when the requirements for recusal are not met, a judge is required not to recuse. In re Royal Manor Mgmt., Inc., 525 B.R. 338, 380 (B.A.P. 6th Cir. 2015) ("Recusal is mandatory when, based on an objective standard of a reasonable person with knowledge of all the facts, the Bankruptcy Judge concludes that her impartiality is reasonably placed in question. However, a federal judge also has a mandatory duty not to recuse unless that standard has been met.") (internal quotations and citations omitted); United States v. Malmsberry, 222 F. Supp. 2d 1345, 1349 (M.D. Fla. 2002) ("[A] judge has [a] strong a duty to sit when there is no legitimate reason to recuse . . .").

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. The Motion to Strike will be denied as frivolous.

As a preliminary matter, the Court must first address Debtor's Motion to Strike the Trustee's Objection. The Court finds that Debtor has stated no grounds for striking the Objection or for any other requested relief. The Motion to Strike is a frivolous filing without factual or legal support.

The Court will now address each of Debtor's assertions or requests in the Motion to Strike. Contrary to Debtor's statements, there are creditors in this case, as evidenced by several proofs of claim that have been filed in this case. (See Claim Nos. 1-8.) Furthermore, Debtor has failed to present any facts showing that she was not afforded due process at any point during this case or that the Trustee has acted improperly in performing his duty to liquidate non-exempt estate property. See 11 U.S.C. § 704(a)(1). Her statement that there was "never a jury trial to [sic] any of the objections [she has] verbally spoken in court and in writing" does not establish that a due process violation has occurred. (ECF No. 225 at 2.) She has made no showing that she had a right to a jury trial on any of these "objections."[3] Nor has she presented any facts showing that the Trustee, the undersigned, or the U.S. Trustee "caus[ed] punitive damages upon the Debtor" or any legal basis that

---

[3] Jury trials are available only in limited circumstances in bankruptcy. See 28 U.S.C. § 157(e); Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42 (1989) (no right to jury trial in actions that are equitable in nature).

AO 72A
(Rev. 8/82)

would support sanctions against these persons. (Id.) Rather, Debtor's complaints regarding the actions of the Trustee, myself, and the U.S. Trustee appear to arise out of each carrying out their respective official duties.

None of Debtor's assertions or requests is relevant to the issue of conversion to chapter 13 and the Trustee's Objection. Additionally, Debtor failed to appear at the hearing on the Motion where she could have prosecuted her Motion and the Motion to Strike the Trustee's Objection. For all of these reasons, the Motion to Strike shall be denied.

**B.  The Motion will be denied because Debtor has failed to prove that she is eligible for chapter 13.**

A debtor's request for conversion from chapter 7 to chapter 13 is governed by 11 U.S.C. § 706(a), which provides: "The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title." 11 U.S.C. § 706(a). A chapter 7 case may be converted to chapter 13 only if the debtor is eligible to be a chapter 13 debtor. 11 U.S.C. § 706(d). Accordingly, a chapter 7 debtor generally has a right to convert to chapter 13 as long as (i) the chapter 7 case has not already been converted and (ii) the debtor is eligible to be a debtor under chapter 13. 11 U.S.C. §§ 706(a), (d).

A person is eligible to be a debtor under chapter 13 only if she has a regular income and owes less than certain debt limits as of the petition date. 11 U.S.C. § 109(e). As of the

petition date in this case, the applicable debt limits were $465,275 in noncontingent, liquidated, unsecured debt and $1,395,875 in noncontingent, liquidated, secured debt. Id.; see also 11 U.S.C. § 104. A debtor seeking conversion has the initial burden of proving a *prima facie* case for conversion by proving her eligibility for chapter 13 relief. Ansin v. Ansin (In re Ansin), 659 B.R. 715, 723 (B.A.P. 1st Cir. 2024) (citing In re Bradley, 649 B.R. 693, 701 (Bankr. D.S.C. 2023)).

Nevertheless, even if a chapter 7 debtor satisfies the above two requirements, she still does not have a right to convert to chapter 13 if she has engaged in bad faith conduct, prepetition or during the pendency of her chapter 7 case, that would establish cause in a chapter 13 case for dismissal or reconversion to chapter 7. Marrama v. Citizens Bank of Mass., 549 U.S. 365, 373-74 (2007). A chapter 13 case may be dismissed or converted to chapter 7 "for cause." 11 U.S.C. § 1307. Courts have determined that prepetition bad faith conduct—including bad faith conduct during the chapter 7 case—constitutes "cause" for dismissal of a chapter 13 case. Marrama, 549 U.S. at 373-74. In other words, where, if the case were converted to chapter 13, the case may be dismissed for bad faith, a chapter 7 debtor is not eligible for chapter 13 and conversion may be denied. Such situations are limited to those where "the debtor's conduct [is] atypical," rather than that of an "honest but unfortunate" debtor. Id. at 374-75. While a debtor has the initial burden to prove she is eligible for chapter 13 under 11 U.S.C. § 109(e), a party that objects to conversion based on

allegations of bad faith has the burden to prove that the debtor has acted in bad faith by a preponderance of evidence. In re Broad Creek Edgewater, LP, 371 B.R. 752, 757 (Bankr. D.S.C. 2007).

The Court now turns to consideration of the Motion. As previously discussed, the two general prerequisites for conversion from chapter 7 to chapter 13 are that (i) the chapter 7 case has not already been converted and (ii) the chapter 7 debtor is eligible for chapter 13. 11 U.S.C. §§ 706(a), (d). This case has not been previously converted. Therefore, the only statutory prerequisite left for the Court to determine is whether Debtor is eligible for chapter 13.

In this case, Debtor must prove she is eligible for chapter 13 by demonstrating that she (i) has a regular income and (ii) owes less than $465,275 in noncontingent, liquidated, unsecured debt and less than $1,395,875 in noncontingent, liquidated, secured debt. 11 U.S.C. § 109(e); see also 11 U.S.C. § 104; Ansin, 659 B.R. at 723.

*i.    Regular Income*

In her sworn Schedule I, Debtor indicated that she works as a "religious volunteer." (ECF No. 13-1 at 32.) She earns no wages, salary, or commissions from this position. (Id.) However, she receives $1,410.00 per month in Social Security and $2,034.97 per month in "pension or retirement income." (Id. at 33.) She also receives $900.00 per month in "contributions" from an unmarried partner, members of her household, her roommates,

or other friends or relatives. Regarding the $900.00 per month contribution, she provided the following details: "religious volunteer, private duty personal care." (Id.) It is not clear whether the $900.00 monthly contribution is actually income paid to her for her services or some other type of contribution. In any event, Debtor has asserted that her total monthly income is $4,344.97. (Id.)

Debtor also filed a document titled "Debtor's Motion 'Employed/Income'" in response to the Trustee's Objection and stated she has a regular income from a part-time job as an administrative assistant and earns an annual salary of $22,000 to $23,000 in this position. (ECF No. 227 at 1-2.)

No parties in interest have disputed that Debtor has a regular income.

Accordingly, the Court concludes Debtor has a "regular income." Even without considering Debtor's purported employment at the "American Prose [sic] Law Institute," Debtor's sworn Schedule I demonstrates she has a regular income in the form of Social Security, pension or retirement income, and the $900.00 monthly contribution she receives from volunteering or from a household, family, or relative source.

ii.    *Debt Limits*

For purposes of the chapter 13 debt limits established under 11 U.S.C. § 109(e), some circuit courts determine the amount of debt a debtor has by looking to the debtor's schedules, "checking only to see if the schedules were made in good faith." Scovis v.

Henrichsen (In re Scovis), 249 F.3d 975, 982 (9th Cir. 2001); see also Glance v. Carroll (In re Glance), 487 F.3d 317, 321 (6th Cir. 2007) (same); NCI Building Systems LP v. Harkness (In re Harkness), 189 F. App'x 311, 314 (5th Cir. 2006) (same). Courts following this approach note that 11 U.S.C. § 109(e) requires courts to determine a debtor's debts as of the petition date and the schedules are readily available at this early date. See In re Gamble, 570 B.R. 272, 276 (Bankr. S.D. Tex. 2017). Other circuits look to the debtor's schedules *and* the proofs of claim, checking to see that they were filed in good faith. These courts avoid "plac[ing] total reliance upon a debtor's characterization of a debt" or a creditor's proof of claim, "for to do so would place eligibility in control of either the debtor or the creditor." Kanke v. Adams (In re Adams), 373 B.R. 116, 121 (B.A.P. 10th Cir. 2007) (internal quotations and citations omitted); see also Barcal v. Laughlin (In re Barcal), 213 B.R. 1008, 1015 (B.A.P. 8th Cir. 1997); In re Kelly, 656 B.R. 541, 580 (Bankr. D. Md. 2023); In re Pantazelos, 540 B.R. 347, 352 (Bankr. N.D. Ill. 2015).

The Eleventh Circuit has not expressly weighed in on what courts should consider when determining chapter 13 eligibility. Lower courts have followed both approaches—considering only the schedules unless there are allegations of bad faith, or looking beyond the schedules, even absent allegations of bad faith. Compare In re Stephens, No. 8:21-bk-03761-RCT, 2021 WL 5150155, at *3 (Bankr. M.D. Fla. Oct. 4, 2021) (considering only debtor's schedules to determine chapter 13 eligibility where no party alleged bad faith),

and In re Tropper, No. 09–76151–WHD, 2010 WL 9012919, at *7-8 (Bankr. N.D. Ga. 2010) (in the context of a motion to dismiss chapter 7 case, considering only debtor's schedules in analysis of possible eligibility for chapter 13 where no party alleged bad faith), with In re Steffens, 342 B.R. 851, 852 (Bankr. M.D. Fla. 2005) (considering schedules and proofs of claim to determine chapter 13 eligibility, absent any allegation of bad faith), and In re Sullivan, 245 B.R. 416, 418 (N.D. Fla. 1999) (same). However, it is generally agreed that a debtor's sworn schedules are the "starting point" when determining chapter 13 eligibility. In re Clements, No. 6:21-bk-05701-GER, 2022 WL 1309948, at *1 (Bankr. M.D. Fla. Apr. 28, 2022); Stephens, 2021 WL 5150155 at *3. Of particular relevance to this case, some courts in this circuit have declined to look beyond a debtor's schedules where the schedules on their face reveal the debtor's ineligibility for chapter 13. In re De La Hoz, 451 B.R. 192, 201 (Bankr. M.D. Fla. 2011) ("[W]here a debtor's schedules reflect debts in excess of the [s]ection 109(e) limits, the Court cannot look beyond the debtor's schedules at the proofs of claim actually filed to determine the debtor's [c]hapter 13 eligibility."); In re Grew, 278 B.R. 619, 622 (Bankr. M.D. Fla. 2002) (where debtor's schedules listed unsecured debt in excess of the statutory limit for chapter 13 and no party had alleged that the schedules had been filed in bad faith, the debtor was ineligible for chapter 13).

The Court will now turn to Debtor's schedules. Debtor scheduled $112,000[4] in *contingent* secured debt, based on a mortgage, in her sworn Schedule D. (ECF No. 13-1 at 15.) She scheduled no noncontingent, liquidated, secured debt. (Id.) Based on Debtor's schedules alone, her noncontingent, liquidated, secured debt of $0 falls below the applicable debt limit ($1,395,875) for chapter 13 eligibility.

Debtor scheduled $881,928.88 in unsecured debt in her sworn Schedule E/F. Of this total amount, she scheduled $512,023.19 as noncontingent, liquidated, unsecured debt. Accordingly, based on Debtor's schedules alone, her noncontingent, liquidated, unsecured debt of $512,023.19 exceeds the applicable debt limit ($465,275) for chapter 13 eligibility.

In this case, the Court will not look beyond Debtor's schedules because they indicate, on their face, that Debtor is ineligible for chapter 13.[5] See De La Hoz, 451 B.R. at 201; Grew, 278 B.R. at 622. To come to a contrary conclusion would require revising or

---

[4] Debtor scheduled a $116,000 contingent claim secured in part by real property worth $120,000. (ECF No. 13-1 at 15.) Of the $116,000 total claim, Debtor indicated $4,000 was unsecured, with the remainder secured. (Id.) The Court notes these details for the sake of completeness.

[5] To this point, courts typically look beyond the schedules and consider a debtor's possible bad faith in filing her schedules when the debtor *underestimates* her debt to be below the debt limits, therefore qualifying for chapter 13. Here, that is not an issue. There has been no suggestion that Debtor has underestimated her debt, and, while there are ample allegations of bad faith, see supra at 2-3, there are no allegations that Debtor *filed her Schedule E/F* in bad faith.

Furthermore, consideration of the proofs of claim in this case would not change the outcome here. The Court notes a point made by the Grew court: "It is a well-known fact that frequently, numerous creditors fail to file claims, especially in a [c]hapter 7 case, which originally was noticed pursuant to F.R.B.P. 2002(e) as a no dividend case." Grew, 278 B.R. at 622. The proofs of claim would hardly provide a complete picture of Debtor's debts, even if Debtor's schedules alone did not disqualify her from chapter 13.

AO 72A
(Rev. 8/82)

second-guessing Debtor's Schedules D and E/F without evidence or argument, which the Court will not do. It is Debtor's burden to show that she is eligible for chapter 13, and she has failed to do so; the Court will not search blindly for chapter 13 eligibility where Debtor has not made any attempt to put forth evidence in support of it. She made no argument that she is eligible for chapter 13 in her Motion and notably failed to appear at the hearing to prosecute her Motion. Under these circumstances and for the reasons stated above, the Court finds that Debtor is not eligible for chapter 13 relief.

   **C. The Motion will be denied because Debtor has engaged in bad faith conduct during the pendency of this chapter 7 case so as to make her ineligible for chapter 13.**

   Even if Debtor's Schedule E/F is inaccurate and her debt does not exceed the debt limit for noncontingent, liquidated, unsecured debt, the Motion will be denied for an additional reason: the Trustee and Mr. Thomas have shown by a preponderance of evidence that Debtor is not eligible for chapter 13 due to her bad faith actions during the pendency of this chapter 7 case. See Marrama, 549 U.S. at 373-74. Debtor has presented no evidence to refute the arguments of the Trustee or Mr. Thomas that she has acted in bad faith. After considering the totality of circumstances in this case, the Court finds that Debtor is not eligible for chapter 13 relief because she has engaged in bad faith conduct and is the "atypical" debtor contemplated by Marrama, not an "honest but unfortunate"

debtor.[6]

The Supreme Court in <u>Marrama</u> did not define bad faith. Courts consider the totality of the circumstances to determine whether a debtor has acted in bad faith. <u>Kitchens v. Ga. R.R. Bank & Trust Co. (In re Kitchens)</u>, 702 F.2d 885, 888-89 (11th Cir. 1983) (providing non-exclusive list of factors to consider and stating that "[b]roadly speaking, the basic inquiry should be whether or not under the under the circumstances of the case there has been an abuse of the provisions, purpose or spirit of [the Bankruptcy Code] . . .").

Courts have determined bad faith conduct that would warrant denial of a motion to convert from chapter 7 to chapters 11 or 13 to include concealing or failing to disclose assets or making misleading statements about assets, <u>Marrama</u>, 549 U.S. at 365-68, <u>In re Williams</u>, No. 23-10189, 2023 WL 5437543, at *7 (Bankr. S.D. Ga. Aug. 23, 2023), <u>In re Tillman</u>, No. 19-12224-JDW, 2019 WL 6127483, at *2 (Bankr. N.D. Miss. Nov. 18, 2019), In

---

[6] The Court notes that its determination to deny the Motion was not based on the grounds that Debtor cannot satisfy the best interest of creditors test under 11 U.S.C. § 1325(a)(4). There are several courts in this circuit that have declined to delve prematurely into potential confirmation issues when considering conversion to chapter 13. <u>In re Clark</u>, No. 21-11774-JCO, 2022 WL 16703171, at *3 (Bankr. S.D. Ala. Nov. 3, 2022) ("[T]he court finds that under the facts of this case, consideration of § 1325 arguments is more appropriately postponed for determination after the case is converted to chapter 13.") <u>In re Dugger</u>, No. 6:16-bk-04010, 2017 WL 11569067, at *2 (Bankr. M.D. Fla. Mar. 13, 2017) ("The Court finds that the issue of [plan] feasibility is one better examined at confirmation . . . The possible inability to confirm a plan should not be the sole reason to disallow reconversion."); <u>In re Carter</u>, 285 B.R. 61, 65 (Bankr. N.D. Ga. 2002) ("[T]he Court is of the opinion that issues regarding the ultimate success of a Chapter 13 plan, such as feasibility, whether the plan has been filed in good faith, and whether the plan will satisfy the additional requirements for confirmation, should be resolved at a confirmation hearing rather than on a motion to convert."). In this case, the Court declines to make any findings on the feasibility of a future chapter 13 plan. Denial of the Motion is based on the other findings made herein.

re Goines, 397 B.R. 26, 34 (Bankr. M.D.N.C. 2007); using non-exempt funds to purchase property and failing to properly disclose the details of acquisition of new property on bankruptcy schedules, In re Mercado, 376 B.R. 340, 348 (Bankr. M.D. Fla. 2007); knowingly and fraudulently making false oaths or accounts or making materially false statements with intent to defraud creditors, In re Fulmer, 535 B.R. 854, 858 (Bankr. M.D. Ala. 2015), In re Sammut, 486 B.R. 404, 408 (Bankr. E.D. Mich. 2012); or failing to turn over estate assets to the trustee and/or cooperate with the trustee, In re Gabriel, 390 B.R. 816, 821 (Bankr. D.S.C. 2008).

### i.     Misleading, Inaccurate, or Incomplete Schedules

"Accurate self-disclosure of one's financial situation is a primary duty of all debtors seeking relief under the Bankruptcy Code." Williams, 2023 WL 5437543 at *5 (citing 11 U.S.C. § 521(a)); see also Marrama, 549 U.S. at 369-70 ("[T]here is no 'Oops' defense to the concealment of assets . . ."); Kitchens, 702 F.2d at 889 (a factor to consider in the good faith analysis is the accuracy of the schedules "and whether any inaccuracies are an attempt to mislead the court"). Here, the Trustee has shown that Debtor failed to disclose her interests in three pieces of real property in her Schedule A/B: 3121 Wedgewood Drive, Macon, GA; 2029 Kitchens Road, Macon, GA; and 1606 George Street, Brunswick, GA. The only real property Debtor disclosed in her Schedule A/B was 4260 Bingham Court, Stone Mountain,

GA 30083. (ECF No. 13-1 at 3.)[7] She also failed to schedule her interest in the proceeds of the tax sale of 1412 Second Street, Macon, GA. These interests are significant—the Trustee values them at approximately $82,906.07 in total. (See ECF No. 217 at 1-2.) Debtor admitted to owning these interests only upon questioning by the Trustee at the § 341 meeting, and to date has not amended her schedules to fully and accurately disclose such interests. Debtor also made an improper claim to a homestead exemption in her Schedule C in property that is not her residence, which the Court disallowed after the Trustee's objection. (See ECF Nos. 13-1, 65, 99.)

Significantly, Debtor failed to appear at the hearing on the Motion and has made no attempt to refute any of this evidence, which the Court finds persuasive. Debtor's failure to schedule significant assets—and continuing failure to amend her schedules to add them—are, under the totality of circumstances, indicative of bad faith and a desire to hide assets from the Trustee, the Court, and her creditors. See In re Boyle, 668 B.R. 117, 121-22 (Bankr. D.S.C. 2025); Williams, 2023 WL 5437543 at *4 (citing In re Blige, 2019 WL 3959982, at *3 (Bankr. S.D. Ga. Aug. 21, 2019) ("Notwithstanding the number and variety of possibly relevant factors, the easiest way to fail the good faith test is for a debtor to misrepresent,

---

[7] Debtor has made misleading statements about her assets in filings besides her schedules. In a letter to the Trustee that she filed with the Court, dated August 30, 2024, Debtor stated: "**The ONLY real estate I have: 4260 Bingham Court, Stone Mountain, GA 30083**[.]" (ECF No. 22 at 1 (emphasis and formatting in original).) As shown by the Trustee, this statement was false.

AO 72A
(Rev. 8/82)

lie or otherwise mislead the court.") (internal citations, punctuation and quotations omitted) and <u>Meredith v. Roberts (In re Roberts)</u>, No. 11-60690, 2013 WL 441378, at *3 (Bankr. S.D. Ga. Jan. 24, 2013) ("Failure to make accurate disclosure in bankruptcy documents, making fraudulent representations to the court, or an unfair manipulation of the Bankruptcy Code is sufficient cause for dismissal [or conversion under § 1307(c)].")). There is no reason to believe that Debtor was ignorant of her interests in these assets when she failed to disclose them, as she ultimately did admit to them at the § 341 meeting after questioning. Similarly, Debtor knew that 4260 Bingham Court, Stone Mountain, GA was not her residence when she attempted to claim it as her exempt homestead in her Schedule C—she readily admitted that she actually resided in Woodbine, GA at the hearing on the Trustee's objection to said exemption.

The Court also notes that Debtor has revealed another inaccuracy in her schedules in response to the Trustee's Objection, asserting that she earns a regular income from a part-time job as an administrative assistant and earns an annual salary of $22,000 to $23,000. (ECF No. 227 at 1-2.) As far as the Court can tell, she did not list this purported employment and income in her sworn Schedule I and has not amended her Schedule I.

Debtor's admissions of (i) previously undisclosed assets to the Trustee at the § 341 meeting; (ii) her true residence at a hearing; and (iii) possible additional or new employment and income in a filing in response to the Trustee's Objection do not exonerate

her initial failure to disclose assets, her various misleading, inaccurate, or incomplete schedules, or her continuing failure to amend her schedules to be accurate. Boroff v. Tully (In re Tully), 818 F.2d 106, 111 (1st Cir. 1987) ("A petitioner cannot omit items from [her] schedules, force the trustee and the creditors, at their peril, to guess that [she] has done so—and hold them to a mythical requirement that they search through a paperwork jungle in the hope of finding an overlooked needle in a documentary haystack."); In re Norwood, No. 12–23027 HRT, 2013 WL 4099834, at *16 (Bankr. D. Colo. Aug. 8, 2013) (finding bad faith for several reasons, including that debtor failed to schedule various assets and debts and admitted to them and amended his schedules only after investigation by the trustee and creditors); In re Nazarian, 18 B.R. 143, 147 (Bankr. D. Md. 1982) (even if haste could excuse or explain inaccuracies in original schedules, "no carelessness could excuse the Debtor's failure to amend his schedules promptly when he had the leisure to do so").

In this case, the dripping faucet of new information comes from Debtor only under pressure from the Trustee. Such disclosure falls far short of what is required from a debtor acting in good faith. The Court finds that Debtor's misleading, inaccurate, or incomplete Schedule A/B, Schedule C, and Schedule I indicate that she has acted in bad faith during this chapter 7 case.

ii.    *Timing and Purpose of Conversion*

The timing and purpose of a request for conversion to chapter 13 may be relevant

to the Court's bad faith inquiry. <u>Williams</u>, 2023 WL 5437543 at *7 (finding of bad faith based on concealment of assets and misleading schedules was bolstered by debtor's amended schedules and moving to convert only "once it became apparent the Trustee was aware [of undisclosed assets] and was seeking additional information"); <u>In re Wampler</u>, 302 B.R. 601, 606-07 (Bankr. S.D. Ind. 2003) ("Contrary to the spirit of the Code, the Debtor has concealed and resisted turnover of a sizable asset, indicating an intention to frustrate both the Trustee and her creditors. It appears to this Court that the Debtor is not seeking protection under Chapter 13 in a sincere effort to repay her debts but in an effort to retain her [class action [r]ecovery.").

The Trustee argues that Debtor has acted in bad faith by filing the Motion only after he moved for turnover of estate property and that the purpose of conversion is to stop such turnover. (ECF No. 217 at 4.) Mr. Thomas argues that Debtor seeks to convert to chapter 13 only to then voluntarily dismiss her case, rather than repay her creditors under a chapter 13 plan. (ECF No. 231 at 2.)

The Motion was filed approximately six weeks after the Court held a hearing on the Trustee's Motion for Turnover (ECF No. 157) of Debtor's property located at 4260 Bingham Court, Stone Mountain, GA 30083. The Court granted turnover verbally from the bench but has not yet issued its written order.

Because Debtor failed to appear at the hearing on the Motion, the Court is without

any argument from her as to her reason for requesting conversion to chapter 13. Based on her conduct throughout this case, however, a desire to pay back her creditors is unlikely to be among her motivations. It is more likely that she seeks conversion now to avoid the turnover of estate property to the Trustee and subsequent liquidation of such property. Combine this with her dogged and counterfactual denials that any creditors have filed claims in this case (see ECF Nos. 96, 119, 187, 225, 226, 227, 230) and it is clear that she is seeking to convert this case not to repay her creditors but to somehow avoid such an outcome. While moving to convert to chapter 13 to avoid liquidation of property is by no means always evidence of bad faith, based on the totality of the circumstances in this case, the timing of the Motion is, at best, suspect. Therefore, the Court finds that the timing of the Motion, when considered with Debtor's past indications that she will refuse to turn over estate property to the Trustee (see ECF Nos. 177, 178), Debtor's denial of the existence of claims in this case, and other bad behavior discussed herein, is an additional factor that is indicative of bad faith.

### iii.    Other Bad Faith Conduct

Beyond her failure to provide an accurate and complete Schedule A/B, Schedule C, and Schedule I, Debtor has exhibited bad faith during this chapter 7 case by attempting to abuse the bankruptcy process to collaterally attack state court decisions, making inappropriate requests of the Trustee, and making several frivolous filings. (See, e.g., ECF

No. 46 (seeking sanctions against a creditor and his attorney for asking about her financial condition at the § 341 meeting); ECF Nos. 46, 51, 96, 119, 137 (challenging the state court's appointment of Mr. Thomas as administrator of their mother's probate estate, which challenge the Court has determined is outside its jurisdiction); ECF Nos. 22, 48, 96 (requesting that the Trustee investigate, subpoena, indict, and/or prosecute certain individuals and entities, including state officials and attorneys, involved in the administration of her mother's probate estate or requesting that the Trustee levy monetary sanctions against certain persons); ECF No. 141 (filing a creditor's apparent criminal record, unredacted in violation of Federal Rule of Bankruptcy Procedure 9037, with the Court for no apparent purpose but to harass or annoy); ECF Nos. 177, 178 (objecting to turnover of non-exempt bankruptcy estate property to the Trustee without legal basis and challenging the Trustee's authority to liquidate estate assets); ECF Nos. 96, 119, 187, 225, 227, 230 (stating, incorrectly, that no claims have been filed in this case or that Mr. Thomas is not a creditor in this case). The Court has previously determined that Debtor filed this bankruptcy case in bad faith at least as to Mr. Thomas and the probate estate of her late mother, because she filed bankruptcy for the purpose of frustrating the progress of the probate case and of several other lawsuits filed by Mr. Thomas or the probate estate against her. (See generally ECF No. 232.) Debtor herself admitted in a prior filing in this case that she filed this bankruptcy to contest the state probate process—an abuse of the bankruptcy

system. (ECF No. 137 at 3-4.)

Based on the totality of circumstances, including Debtor's failure to disclose certain assets; her provision of misleading, inaccurate, or incomplete information in her Schedule A/B, Schedule C, and Schedule I; her continuing failure to amend her schedules to correct misleading, inaccurate, or incomplete information; the timing of her request for conversion; and her pattern of abusive or frivolous filings, the Court finds that Debtor has acted in bad faith during the pendency of this case. Rather than pursue bankruptcy with an honest interest in repaying her creditors, she has misled them, the Court, and the Trustee since the onset of this case, exhibited uncooperative behavior through abusive, baseless filings, and attempted to use this case to frustrate the legitimate efforts of her creditors in state court proceedings. (See generally ECF No. 232.) Such conduct has rendered her ineligible for chapter 13 under Marrama. For the reasons set forth above,

## ORDER

**IT IS HEREBY ORDERED** that Debtor's Motion to Strike the Trustee's Objection (ECF No. 225) is **DENIED**; and

**FURTHER ORDERED** that the Trustee's Objection (ECF No. 217) is **SUSTAINED** as provided in this Order; and

**FURTHER ORDERED** that Debtor's Motion to Convert to Chapter 13 (ECF No. 215) is **DENIED**.[8]

Michele J. Kim
Chief United States Bankruptcy Judge
Southern District of Georgia

Dated at Brunswick, Georgia,
this 1st day of July, 2025.

---

[8] Debtor filed a Second Motion to Convert to Chapter 13 (ECF No. 251) on April 24, 2025. It is duplicative of the Motion to Convert to Chapter 13 (ECF No. 215) and is now denied as moot.